2003 WY 80

Christopher ERPELDING,
Appellant (Plaintiff),

v.

Victor LISEK and Victor Lisek,
P.C., Appellee (Defendants).

No. 02–67.

Supreme Court of Wyoming.

June 27, 2003.

Bernard Q. Phelan, Cheyenne, Wyoming, Representing Appellant.

John A. Coppede and Andrea L. Richard of Rothgerber, Johnson & Lyons, LLP, Cheyenne, Wyoming, Representing Appellee. Argument by Ms. Richard.

Before HILL, C.J., and LEHMAN, KITE, and VOIGT, JJ., and SANDERSON, D.J.

SANDERSON, D.J.

[¶ 1] Appellant, Christopher Erpelding (Erpelding), has appealed from a summary judgment in favor of Appellee Victor Lisek, individually, and Victor Lisek, P.C. (Lisek). The district court found there was no genu-

ine issue of material fact as to whether Lisek breached a duty of care owed to Erpelding, and that the statute of limitations had expired. We hold that the district court correctly concluded that Lisek breached no duty of care owed to Erpelding and affirm.

## ISSUES

[¶ 2] Erpelding presents the following issues for our review:

A. Where an employee is referred to a counselor because "everyone has problems" and the counselor prescribes treatment, is there sufficient evidence of a relationship upon which a duty of care may be imposed?

B. Was the statute of limitations met?

[¶ 3] Lisek frames the issues as follows:

I. Whether [Erpelding's] causes of action for alleged professional negligence were barred by the two-year statute of limitations for the rendering of licensed professional services where [he] knew or should have known of the alleged act, error or omission nearly four (4) years before he filed his complaint?

II. Whether [Lisek] owed a duty to [Erpelding] in performing an independent mental evaluation of [him], other than to avoid causing an injury to him during the course of the evaluation itself, where [Lisek] neither counseled nor treated [Erpelding], but only evaluated [him] at the request of his employer?

## FACTS

[¶ 4] The Wyoming Department of Transportation (WYDOT) employed Erpelding from 1991 to May of 1998. His tenure with WYDOT was punctuated by combative arguments and confrontations with co-workers, supervisors, and contractors working for WYDOT. As a result, Erpelding received written warnings and reprimands from his supervisors.

[¶ 5] Erpelding's supervisors sent him to Lisek, a licensed psychological counselor, to obtain an assessment of Erpelding's psychological condition and recommendations as to what the employer could do to alleviate the problems at the workplace. In all, Erpelding met with Lisek on three occasions beginning in August of 1997. At the beginning of each of these meetings Erpelding signed a "Permission for Release of Confidential Information" so that any information obtained by Lisek and any records or reports generated by him would be provided to WYDOT. After each visit, Lisek sent a report to Mr. Dover, which gave his assessment of Erpelding. Following the first visit, Lisek recommended that Erpelding receive psychological counseling and that WYDOT make a "change in work environment." Lisek's recommendation was based on interviews and psychological tests known as the Minnesota Multiaxial Inventory. As a result, Erpelding went to the Veterans Administration in Sheridan for psychological counseling.

[¶ 6] Erpelding continued to have confrontations with his co-workers. In April of 1998, Erpelding's immediate supervisor again sent him to Lisek for the second assessment and Lisek sent a report of the second evaluation to WYDOT. Lisek's report characterized Erpelding's personality patterns as outside of "societal and acceptable performance norms" which would cause him to continue to have difficulties in getting along with his co-workers and supervisors. Lisek recommended that WYDOT place Erpelding in a highly structured and highly restricted work environment which would minimize his interaction with co-workers. In June of 1998, WYDOT terminated Erpelding citing his disruptive, hostile and combative behavior in the workplace and claiming that there were no available assignments "which were highly restrictive, highly structured and in a setting where the duties assigned would not require consistent interaction with his co-workers."

[¶ 7] Erpelding successfully appealed his dismissal because WYDOT's rules did not permit WYDOT to utilize the opinion of licensed professional counselors in determining whether an employee was medically ineligible for employment. He was reinstated to his employment in May of 1999.

[¶ 8] WYDOT sent Erpelding to Lisek for a third assessment in June of 1999. WYDOT had, in the interim, changed its personnel rules to allow licensed professional counsel-

ors to conduct examinations and make recommendations to WYDOT. Erpelding objected to going to Lisek again, but ultimately relented and attended. Following Lisek's third report, Erpelding was again dismissed on June 30, 1999. Another appeal followed and the hearing examiner again reversed WYDOT's decision to dismiss Erpelding, and WYDOT appealed. While the appeal was pending, Erpelding sued WYDOT alleging his dismissal violated the Americans With Disabilities Act. WYDOT settled, resulting in a monetary settlement and dismissal of Erpelding's suit against WYDOT and WYDOT's appeal.

[¶ 9] Erpelding then focused his attention on Lisek and brought a malpractice suit against him on March 7, 2001. Following discovery, Lisek moved for summary judgment on the basis that Erpelding's claims were time barred by the statute of limitations and because there was no counselor/patient relationship between the two. Concluding there was no counselor/patient relationship between them and therefore no duty owed to Erpelding as a matter of law, and that the claims were barred under the two-year statute of limitations, the district court granted summary judgment to Lisek.

## DISCUSSION

### A. Standard of Review

[¶ 10] Summary judgment is proper, even in negligence cases, when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. When we review a motion for summary judgment, we view the record on appeal in the light most favorable to the party opposing the motion and accept all favorable inferences that can be drawn from the record in favor of that party.

*Valance v. VI–Doug, Inc.,* 2002 WY 113 ¶ 7, 50 P.3d 697, ¶ 7 (Wyo.2002). We have often stated:

Summary judgments are not favored in negligence actions and are subject to exacting scrutiny. However, even in a negligence action, summary judgment may be appropriate, especially if a plaintiff cannot establish existence of a duty on the part of the defendant.

*Valance,* ¶ 7 (quoting *Duncan v. Town of Jackson,* 903 P.2d 548, 551 (Wyo.1995)).

[¶ 11] The elements of a negligence action are: (1) The defendant owed a duty to the plaintiff to conform to a specified standard of care; (2) The defendant breached a duty of care to the plaintiff; (3) The breach of the duty proximately caused the injury to the plaintiff; and (4) The injury sustained by the plaintiff is compensable by money damages. *Valance,* ¶ 8.

### B. Duty

[¶ 12] This case presents an issue of first impression in Wyoming: Whether a professional counselor who is hired by the employer to perform a psychological evaluation on an employee for the benefit of the employer has a duty of care to the employee?

[¶ 13] "Without duty, negligence is not actionable. The existence of duty is a question of law, making an absence of duty the surest route to summary judgment in negligence actions." *Daily v. Bone,* 906 P.2d 1089, 1043 (Wyo.1995) (citing *MacKrell v. Bell H₂S Safety,* 795 P.2d 776, 779 (Wyo. 1990); *Tidwell v. HOM, Inc.,* 896 P.2d 1322, 1325 (Wyo.1995)).

[¶ 14] Duty focuses on the relationship of individuals and imposes on one an obligation for the benefit of the other. "A duty exists where, 'upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant.' PROSSER AND KEETON ON TORTS § 37 at 236 (5th ed.1984)." *Duncan v. Afton, Inc.,* 991 P.2d 739, 742 (Wyo.1999). Conversely, if no such relationship exists, then an obligation for the benefit of another is not imposed.

[¶ 15] In a malpractice action, a physician/patient relationship is normally required to establish a duty to act for the patient's benefit. *Roybal v. Bell,* 778 P.2d

108, 109 (Wyo.1989); *Vassos v. Roussalis,* 658 P.2d 1284, 1287 (Wyo.1983). This analysis of a physician/patient relationship applies equally to mental health professionals. *Hafner v. Beck,* 185 Ariz. 389, 916 P.2d 1105, 1107 (App. Div. 2 1995). However, since *Gates v. Richardson,* 719 P.2d 193 (Wyo. 1986), we have refused to be constrained by the "privity" test as the sole determinant of whether a duty exists.

[¶ 16] Erpelding contends that the district court erroneously limited itself to a privity analysis when it found that Lisek owed him no duty of care because a counselor/patient relationship did not exist. He argues that courts should apply the balancing test most recently utilized by this Court in *Duncan,* 991 P.2d at 739.

[¶ 17] Lisek relies on the reasoning contained in *Hafner,* 916 P.2d at 1108 and *Martinez v. Lewis,* 969 P.2d 213 (Colo.1998). *Hafner* held there was no duty because there was no physician/patient relationship, in other words, no privity. However, *Martinez* rejected the privity analysis and utilized a balancing of pertinent factors test to determine whether a physician, who conducted an independent medical examination for an insurer, had a duty to the patient.[1] The court in *Martinez* held that while the absence of a physician/patient relationship is not dispositive as to the existence of a duty, under the factors considered, the physician in that case did not owe Martinez a duty of care.

[¶ 18] Since *Gates,* we have utilized a test which balances several factors to determine whether a defendant should owe a duty of care to a plaintiff: (1) The foreseeability of harm to the plaintiff; (2) The closeness of the connection between the defendant's conduct and the injury suffered; (3) The degree of certainty that the plaintiff suffered injury; (4) The moral blame attached to the defendant's conduct; (5) The policy of preventing future harm; (6) The extent of the burden upon the defendant; (7) The consequences to the community and the

court system; and (8) The availability, cost and prevalence of insurance for the risk involved. *Duncan,* 991 P.2d at 744. We now apply this eight-factor test to the circumstances of this case. We assume, for purposes of this analysis, that Lisek was negligent in the conduct of his examination and report to WYDOT.

[¶ 19] *1. The foreseeability of harm to the plaintiff.* Should Lisek have foreseen that Erpelding would be fired? It must have been apparent that Erpelding's tenure was in jeopardy because of his history of disputes with his co-workers. Erpelding contends that it was "foreseeable" that Lisek's reports, "right or wrong" could cause harm to him because WYDOT would rely on those reports in dismissing him. That, it is argued, is sufficient to impose a duty of care. We do not agree.

[¶ 20] Lisek was not hired by WYDOT to make a recommendation as to whether Erpelding should remain employed. He was employed to conduct a psychological assessment and make recommendations as to what could be done to reduce conflicts at the workplace. He was an independent examiner who was working primarily for the benefit of the employer. Lisek recommended, in essence, that Erpelding's contact with co-workers be kept to a minimum and that Erpelding see another psychologist to deal with his mental or emotional issues. Erpelding and WYDOT were in greater control of the circumstances that determined whether Erpelding would keep his job. It was not necessarily foreseeable that Lisek's recommendation would have resulted in Erpelding's dismissal. This case is not like the facts in *Duncan* where the outcome of a drug or alcohol test was the sole determinant of whether an employee kept his job. There, the consequence of a test which revealed an unacceptable level of alcohol was predictable and severe.

[¶ 21] Even if financial harm to an examinee is a foreseeable consequence of an independent examiner's opinion, that is not as

---

1. *Martinez* utilized a test which contained the following factors in determining whether a duty of care exists: The risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the

magnitude of the burden of guarding against the harm, and the consequences of placing the burden of a duty on the defendant. *Martinez,* 969 P.2d at 218 (citing *Greenberg v. Perkins,* 845 P.2d 530 at 536 (Colo.1993)).

important a consideration as it may be in other relationships. For example, independent examiners are often employed to verify the accuracy of a plaintiff's claims. It is entirely foreseeable that the independent examiner may conclude that the plaintiff's claims are exaggerated with the result being that the plaintiff receives less than he might have. The very nature of the independent examiner's role may result in economic harm to the examinee.

[¶ 22] Even if dismissal of Erpelding was a foreseeable consequence of Lisek's negligently formed opinion, litigation involving wrongful termination is also a foreseeable consequence. Either of these consequences should cause an independent examiner to perform his tasks with reasonable care. The foreseeability of harm does not, under these circumstances, weigh in favor of imposing a duty.

[¶ 23] *2. The closeness of the connection between the defendant's conduct and the injury suffered.* WYDOT attempted to fire Erpelding after a period of continued flareups at the work place and immediately after receiving the second and third assessment reports from Lisek. However, WYDOT fired Erpelding even though there was no recommendation from Lisek to do so. The record reflects that WYDOT relied upon several reasons to dismiss Erpelding, including incapacity to perform assigned duties, unsatisfactory work performance, and insubordination, and because there was no position available where Erpelding would work alone. We conclude that while Lisek's report was a factor in the decision to dismiss, we cannot say that it was the overriding or motivating factor behind the decision. This factor does not weigh in favor of imposing a duty.

[¶ 24] *3. The degree of certainty that the plaintiff suffered injury.* That Erpelding suffered injury is not disputed. He lost his job.

[¶ 25] *4. The moral blame attached to the defendant's conduct.* Serious misconduct may increase the scope of persons who are entitled to protection afforded by the imposition of duty. For example, the class of persons that fall within the scope of an actor's duty is larger if a misrepresenta-

tion is fraudulent than the class of persons where the misrepresentation is negligent. *See* Restatement (Second) of Torts, § 552, cmt. h (1977). (The negligent supplier of information is liable only to those persons for whose benefit and guidance it is supplied. The maker of a fraudulent misrepresentation is liable to any person the maker has reason to expect to act in reliance upon it.) Here, Erpelding contends that Lisek acted negligently.

[¶ 26] Whether or not the defendant receives financial benefit or has control over how his opinion is utilized are considerations that may weigh in favor of imposing duty. *Duncan,* 991 P.2d at 745; Restatement, *supra,* § 552, cmt. c. (If the information is given gratuitously, the supplier is under no duty to exercise reasonable care and competence in giving it.) Lisek was compensated for his services. However, unless the misrepresentation is the product of misconduct, which is more serious than ordinary negligence, there is no moral blame sufficient to impose a duty even if the supplier is compensated. *Id.,* cmt. h.

[¶ 27] *5. The policy of preventing future harm.* We are considering the harm to an examinee created by an unfavorable report upon which the employer will rely in deciding whether the examinee will keep his job. While this scenario raises significant concerns, the employee's alternative avenues of relief against the employer for wrongful termination provide strong incentives for an employer to hire and rely upon psychologists who will perform their independent examination adequately and competently.

[¶ 28] *6. The extent of the burden on the defendant.* There would undoubtedly be a serious impact on the objectivity of an independent examiner and on his willingness to even undertake the responsibility of making a recommendation if the examination must be made with one eye studying the prospect of being sued by the examinee. Other courts have expressed this concern. "If an IME practitioner's evaluations, opinions, and reports could lead not only to vehement disagreement with and vigorous cross-examination of the practitioner in the claims or litiga-

tion process, but also to his or her potential liability for negligence, the resulting chilling effect would be severe." *Martinez*, 969 P.2d at 219 (quoting *Hafner*, 916 P.2d at 1107). This factor weighs against the imposition of duty.

[¶ 29] *7. The consequences to the community and the court system.* The primary concern here is the burden on the courts that a new class of eligible litigants would bring. Justice Cardine once observed, "[I]f the only purpose of our law was to unburden the court system, then we would reach the zenith of judicial achievement simply by closing the district courts to all litigants and allowing all wrongs to come to rest on innocent victims." *Gates*, 719 P.2d at 197. He later described the effects of being too liberal in imposing a duty: "It has long been a practice to join as a party defendant every person with any potential liability for injuries suffered in an accident." *Mostert v. CBL & Associates*, 741 P.2d 1090, 1104 (Wyo.1987) (Cardine, J., dissenting).

[¶ 30] Erpelding simply asserts that there would be "no flood of litigation." We are not comforted by that assurance. We are more persuaded by the concern of the New York Supreme Court in a case where parents sued a psychiatrist who was hired by a school district to evaluate a child in order to aid the district in deciding whether the child should be transferred to another type of educational placement. Unhappy with the psychiatrist's opinion, the parents sued him for malpractice. The court refused to impose a duty because there was no physician/patient relationship explaining:

> To permit such an action would make it impossible to find any expert witness willing to risk a lawsuit based on his testimony as to his opinions and conclusions before any tribunal. And such cause of action if permitted would lead to an endless stream of litigation wherein defeated litigants would seek to redeem loss of the main action by suing to recover damages from those witnesses whose adverse testimony

might have brought about the adverse result.

*Davis v. Tirrell*, 110 Misc.2d 889, 443 N.Y.S.2d 136, 140 (Sup.Ct.1991).

[¶ 31] *8. The availability, cost and prevalence of insurance for the risk involved.* The parties make no argument with regard to the availability of cost and prevalence of insurance for the risk involved. We will, therefore, not consider this factor.

[¶ 32] "Duty is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Duncan*, 991 P.2d at 746. After examining the question of whether or not a duty should be found to exist by balancing the factors established in *Gates*, we hold, under the particular facts of this case, that Lisek, in performing an independent psychological evaluation for the benefit of Erpelding's employer, did not owe Erpelding a duty of care. We observe that this conclusion is in accord with virtually every other court that has considered this issue. *See Felton v. Schaeffer*, 229 Cal.App.3d 229, 279 Cal.Rptr. 713, 716 (Cal.App.1991).[2]

## C. Statute of Limitations

[¶ 33] Having found that no duty existed, there is no need to review the trial court's grant of summary judgment on the basis that Erpelding did not file his suit within the governing statute of limitations.

## CONCLUSION

[¶ 34] A licensed professional counselor who negligently conducts an examination of an employee at the request of the employer and who submits to the employer a report of his examination conclusions and recommendations does not owe a duty of care to the employee. The trial court's grant of summary judgment in favor of Lisek is affirmed.

---

**2.** There may be situations where a duty is found to exist even though the examination was done at the behest of an employer or other third party.

*Felton*, 279 Cal.Rptr. at 717–718; *Greenberg v. Perkins*, 845 P.2d 530, 537 (Colo.1993); Restatement (Second) of Torts § 531 (1977).