2005 WY 86

**D & D TRANSPORT, LTD., a Wyoming Corporation, Appellant (Plaintiff),**

v.

**INTERLINE ENERGY SERVICES, INC., a Wyoming Corporation, a wholly-owned subsidiary company of Interline Resources Corporation, a Utah Corporation, and Basin Western, Inc., a Utah Corporation, Appellees (Defendants).**

No. 04–206.

Supreme Court of Wyoming.

Aug. 4, 2005.

Representing Appellant: Ronald E. Triggs, Cheyenne, Wyoming.

Representing Appellee Interline Energy Services, Inc.: Timothy G. Williams, Alpine, Utah.

Representing Appellee Basin Western, Inc.: Cameron S. Walker and Judith Studer of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming. Argument by Mr. Walker.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶1] D & D Transport, Ltd. appeals the district court's grant of summary judgment in favor of Interline Energy Services, Inc. and Basin Western, Inc. D & D sued Interline and Basin Western in negligence for damages caused as a result of a fire at Interline's processing plant. D & D sought damages including approximately $3.6 million dollars for lost profits. We affirm.

## ISSUES

[¶2] The three parties each state the issues differently. D & D phrases the issue as:

> Did the court err in granting the motions for summary judgment of Basin Western, Inc., and Interline Energy Services, Inc., as to consequential economic damages sustained by the plaintiff?

Interline states the issues as:

> 1. Is *Tolar v. [Amax] Coal Co.*, 862 P.2d 144 (Wyo.1993) the controlling precedent in Wyoming which allows D & D to maintain its tort action for consequential economic damages it claims to have suffered [?]
>
> 2. Did Interline owe D & D a duty to protect its economic interests by keeping its Plant in operation [?]

Lastly, Basin Western asserts the following issues:

> A. Did the court err when it granted summary judgment for "economic damages" that had no relation to the property loss sustained by D & D?
>
> B. Can a business (D & D) claim damages for prospective lost profits and/or loss of business value for inconvenience to its operations allegedly caused by injury to a third party's property?

C. Did Interline or Basin Western owe a legal duty to D & D not to damage the Well Draw Gas Plant?

D. Did D & D present competent evidence to support its claim of economic loss?

## FACTS

[¶ 3] Interline owned a processing facility in Converse County, Wyoming, known as the Well Draw Gas Plant. Interline processed natural gas liquids at this facility. Basin Western and D & D are trucking companies that hauled natural gas liquids to the Well Draw Gas Plant. D & D also hauled product from the Well Draw Gas Plant to other facilities. During the relevant times, D & D was in Chapter 11 bankruptcy working to execute its approved bankruptcy plan.

[¶ 4] On June 22, 2002, a D & D trucking unit was at the Well Draw Gas Plant delivering product. Two Basin Western trucking units were also at the plant. D & D parked its truck at the plant's loading facility and waited for the opportunity to unload. At this time, one of the Basin Western drivers was in the process of unloading the product he had hauled to the plant. During the unloading process, a coupling began to leak. The Basin Western driver attempted to stop the leak by striking the coupling. The connection de-coupled, and the product rapidly escaped toward the other Basin Western truck, which had been left running in violation of Interline's rules and regulations for loading and unloading. When the escaping product reached the running truck there was an explosion and fire. The fire spread to and destroyed D & D's trucking unit, which included a tractor, a full size trailer, and a "pup" trailer. The fire also substantially damaged the Well Draw Gas Plant. Some time after the fire, Interline was able to resume a small portion of its previous operations and separated some natural liquids into natural gasoline and liquefied petroleum. The lighter ends were sent down the pipeline, and the remainder was hauled by Interline's own trucks.

[¶ 5] On July 8, 2003, D & D filed suit in negligence against Interline and Basin Western, seeking to recover damages as a result of that fire. D & D claimed $130,000 in compensatory damages related to the loss of its equipment. D & D also sought $3.6 million in consequential economic damages for prospective lost profits and loss of business value. In essence, D & D argued that due to Basin Western's and Interline's negligence, D & D was unable to emerge from bankruptcy and the business failed. Basin Western filed a motion for partial summary judgment on D & D's claim for consequential economic damages. The district court denied this motion on March 11, 2004, stating "this court lacks power to enter a partial summary judgment on one element of damages under the holding of *Errington v. Zolessi*, 9 P.3d 966 (Wyo.2000)."

[¶ 6] Thereafter, on March 12, 2004, the parties participated in mediation. At mediation the parties settled all the issues related to D & D's loss of the tractor and two trailers as well as the lost income that could have been earned by those units before they were replaced. However, the parties were not able to settle the issues related to the consequential economic damages or agree on language for a release following the mediation. The matter was then presented to the district court for resolution. Because the uninsured damages and lost income for injury to D & D's truck and trailers had been settled, Basin Western filed another motion for summary judgment. Basin Western argued that all of D & D's damage claims had been resolved by settlement or were disallowable as a matter of law. The district court granted summary judgment against D & D in favor of Basin Western finding that the damages were not recoverable as a matter of law. The claims against Interline were similarly resolved. D & D now appeals.

## STANDARD OF REVIEW

[¶ 7] Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Owsley v. Robinson*, 2003 WY 33, ¶ 7, 65 P.3d 374, ¶ 7 (Wyo.2003). *See also* W.R.C.P. 56(c). This Court considers the record in the perspective most favorable to

the party opposing the motion and gives that party the benefit of all the favorable inferences which may be fairly drawn from the record. *Hasvold v. Park Cty. Sch. Dist. No. 6*, 2002 WY 65, ¶ 11, 45 P.3d 635, ¶ 11 (Wyo.2002); *Anderson v. Solvay Minerals, Inc.*, 3 P.3d 236, 238 (Wyo.2000). We review questions of law *de novo* without giving any deference to the district court's determinations. *Hasvold*, ¶ 11.

*Castleberry v. Phelan*, 2004 WY 151, ¶ 8, 101 P.3d 460, ¶ 8 (Wyo.2004).

## DISCUSSION

[¶ 8]   In short terms, the issue before this Court is whether the district court erred in granting summary judgment.   When resolving this issue it is important to recognize that the parties settled D & D's claim for physical damage to its equipment and lost profits resulting from the inability to use that equipment before it was replaced.   Only D & D's consequential economic loss claim remained for trial.

[¶ 9]   It is also important to understand the basis of D & D's economic loss claim.   D & D's two claims are described in D & D's responses to Basin Western interrogatories:

5.   Please describe with specificity the compensatory damages D & D Transport alleges in the Complaint including:

(a) the amount of such loss;

(b) the manner by which such loss was computed;

(c) identify all documents and witnesses tending to substantiate your answer to this interrogatory and subparts.

ANSWER: $15,000 for deductible, $30,000 for downtime and $85,000 for equipment, subject to a subrogation demand by Great West Casualty.

6.   Please describe with specificity the lost profits of D & D Transport stated in the Complaint, including:

(a) the amount of such loss;

(b) the manner by which such loss was computed;

(c) identify all documents and witnesses tending to substantiate your answer to this interrogatory and subparts.

ANSWER: Well Draw Gas Plant, hauled two loads per day, seven days a week, 13,000 gallons per load at .03¢ per gallon equals $390.00 per load times two loads per day equals $780.00 per day, times 365 days per year equals $284,700 per year, plus lost profit from back hauls.   Leah Thompson and David Thompson.   Invoices.   The complete report, being prepared by Dr. Jerome Sherman, will be forwarded upon completion.

Dr. Jerome Sherman's report projected lost profits for D & D, which shut down approximately three months after the Well Draw Gas Plant fire.   Dr. Sherman calculated this loss at $3,628,970 based on two years and three months of lost profits plus the value of the business at five times the earnings.

[¶ 10]   An affidavit from D & D's president further explained that D & D intended to do business with Hinze Inc. & Affiliates and Plains Marketing L.P. The plan for this business arrangement was described as follows:

B.   It is common practice for trucking companies to run their trucks loaded all of the time to avoid "empty" miles.   D & D did this to make sure that the trucks were making money.   If trucks can be kept loaded at all times, competitive rates can be offered to customers.

C.   D & D was to use the Well Draw facility as a hub for the hauling with Hinze and Plains as it was only 75 miles from D & D's terminal, which shortens the "empty" miles

D.   D & D's plan was that after it hauled a load of [natural gasoline] to Cheyenne, it would then haul a load from Cheyenne to a customer in Rock Springs, unload the fuel and run 74 miles empty to Opal, Wyoming, where D & D would load the [natural gasoline] for Plains, haul it to the rail spur at Hinze in Cody, where D & D had the option to either haul fuel out of Cody and take it to Casper or Rock Springs, or drive 46 empty miles to Elk Basin, Wyoming, where D & D would then load [natural gasoline] to take to Cheyenne, then re-load in Cheyenne and bring it back to Casper, then drive the 75 miles back to Well Draw.

E. After the explosion at Well Draw, that forced D & D to drive further to pick up loads. For instance, instead of driving 75 miles to load, D & D had to drive 185, 295, 147 or 261 miles to get a load. Because of this, the economics of the intent to do business with Hinze and Plains was no longer feasible.

At the time of the fire, D & D did not have a contract with Interline. D & D merely picked up loads of product and hauled them to and from Interline for third parties. Thus, it appears D & D's economic loss claim is based on D & D's inability to haul to and from the Well Draw Gas Plant following the fire due to the fact that the Well Draw Gas Plant was not operational or safe.

[¶ 11] D & D begins by arguing that economic damages are recoverable in tort generally, and in this case specifically, under the principles established by this Court in *Tolar v. Amax Coal Co.,* 862 P.2d 144 (Wyo.1993). D & D asserts that the issue in *Tolar* was whether the economic losses of the plaintiff were recoverable in an action sounding in negligence and this Court found that they were. Therefore, D & D maintains this case is "on all fours corners" with *Tolar.* We do not agree with D & D's analysis of the *Tolar* case.

■ [¶ 12] In *Tolar,* the owners of a convenience store sued a mine developer following the forced evacuation of their convenience store, which was allegedly caused by the mine's release of poisonous methane and hydrogen sulphide gases into the atmosphere. *Tolar,* 862 P.2d at 145. The Tolars argued the evacuation caused their business to fail, and they sought consequential economic damages for this failure. The mine developer argued the business failed because of the economy. *Id.* The district court granted summary judgment to the mine developer finding the convenience store's failure was a result of a downturn in the economy, not the forced evacuation. *Id.* at 144. We reversed. We held that the cause of the convenience store's failure was hotly disputed, and as such, the case was not appropriate for summary judgment. Instead, the cause of the damages must be resolved by the fact finder, unless reasonable persons could not disagree.

*Id.* at 146. Indeed, *Tolar* simply stands for the proposition that the general rule in Wyoming is that the proximate cause of harm is a question for the trier of fact. Proximate cause is not the issue presented by the instant case, and therefore the analysis in *Tolar* is not applicable.

[¶ 13] Additionally, even if *Tolar* could be read in some limited manner to stand for the proposition that these types of economic losses are recoverable in tort, this case is distinguishable in another important respect. In *Tolar,* the Tolars owned the business whose operations were impaired as a result of the mine operator's negligence, and it was that business's failure that allegedly caused the Tolars' future economic loss. In other words, there was a direct link between the property damaged and the economic loss claimed. In this case there is no such link. D & D bases its claim for economic losses on damage to the Well Draw Gas Plant and the cessation of the plant's normal operations. D & D does not own the Well Draw Gas Plant. In fact, D & D does not even have a contractual relationship with the Well Draw Gas Plant. D & D did own a truck that was damaged, but the damage to the truck did not cause the economic loss D & D seeks to recover. Thus, D & D's claim for economic damages in this case is distinguishable from the economic damages claimed in *Tolar.*

■ [¶ 14] D & D next points out that Wyoming follows the economic loss rule, which bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property. *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.,* 929 P.2d 1228, 1234 (Wyo.1996). D & D argues that because D & D's property was damaged, the economic loss rule is satisfied, and therefore D & D is entitled to recover the economic damages they claim. Wyoming does indeed follow the economic loss rule. We have adopted the rule in products liability cases based on negligence and strict liability theories. *Rissler,* at 1234 n. 1 (citing *Schneider v. Holland Hitch,* 843 P.2d 561, 586 (Wyo. 1992); *Continental Insurance v. Page Engineering,* 783 P.2d 641, 647-9 (Wyo.1989); *Buckley v. Bell,* 703 P.2d 1089, 1095 (Wyo.

1985); *Cline v. Sawyer,* 600 P.2d 725, 732 (Wyo.1979)). We have also applied this same rule where an employer sued a third party in negligence for the loss of his employee's services. *See Champion Well Service, Inc. v. NL Industries,* 769 P.2d 382 (Wyo.1989).

[¶ 15] In *Champion,* Champion Well Service claimed that NL Industries negligently injured one of Champion's key employees. Champion argued that, as a result of the employee's injury, Champion suffered economic loss even though Champion suffered no direct injury. *Id.* at 382. In concluding that Champion was not entitled to the damages claimed we noted:

We agree that NL owed a duty of care to Champion to avoid the risk of causing economic damages. But the economic damages recoverable in these circumstances are those that result from injury to, or loss of use of, property, not injury to third persons. Thus, NL owed a duty of care to Lang to avoid negligently causing him injury. But to hold that NL owed a duty to diverse third persons, including Champion, to avoid injury to Lang would be to adopt a rule that is too broad, unwieldy, and impractical in present day society. Surely Lang's injury might impact his friends, his fishing buddies, his business partners, his employer, his grocery man, or his cleaning lady. They might have suffered damages, or they might not. None had any assurance that their relationship with Lang would continue for any particular period of time. Even personal service contracts are practically unenforceable insofar as they seek to force an employee to work. Claimed damages would be a product of total speculation and conjecture. If we adopted appellant's theory, every multi-national corporation whose employee was negligently injured by a third party in an auto accident, a ball game, at work, or at a party, would have a claim for damage. We decline appellant's invitation to adopt this theory for recovery.

\* \* \* \*

We are convinced that the cause of action argued by Champion would erase the bright line which "has traditionally marked negligence claims for economic harm as off

limits." Prosser & Keeton, Law of Torts, § 129, p. 1001 (5th Ed.1984). Therefore, we hold the district court properly dismissed Count II of Champion's complaint for failure to state a claim upon which relief can be granted.

*Id.* at 384–85. Similar reasoning is applicable in this case. Basin Western and Interline owe a duty of care to avoid the risk of causing economic damages. However, the economic damages recoverable in this circumstance are those that result from loss of the use of D & D's property, not injury to a third persons property. Indeed, the damages D & D seeks to recover are as remote as those claimed in *Champion.* D & D had no assurance its relationship with Interline would continue for any particular time. D & D's damages are therefore the product of speculation and conjecture and would similarly erase the bright line which has traditionally marked negligence claims for economic harm as off limits. *Id.* at 385.

[¶ 16] Furthermore, one of the policies behind the economic loss rule is the recognition that the economic consequences of any single accident are virtually limitless. Accordingly, the economic loss rule recognizes this and seeks to avoid the consequence of open-ended tort liability. *In Re Chicago Flood Litigation,* 176 Ill.2d 179, 223 Ill.Dec. 532, 680 N.E.2d 265, 274 (1997). Beyond seeking to avoid the policy behind the economic loss rule by arguing it suffered property damage and therefore complies with the letter of the rule, D & D has skipped a critical step in making its negligence claim. Specifically, as with all negligence claims, D & D must show four elements: 1) a duty owed to the plaintiff, 2) a breach, or violation of that duty, 3) which is the proximate cause of 4) plaintiff's injuries. *Century Ready–Mix Co. v. Campbell Cty. Sch. Dist.,* 816 P.2d 795, 802 (Wyo.1991). In this instance, D & D has failed to show the first element that Basin Western and Interline had a duty to D & D; and without a legal duty, there can be no negligence claim. "Duty focuses on the relationship of individuals and imposes on one an obligation for the benefit of the other." *Erpelding v. Lisek,* 2003 WY 80, ¶ 14, 71 P.3d 754, ¶ 14 (Wyo.2003). A duty exists

if the facts show there is a relationship between the parties such that the community will impose a legal obligation on one party for the benefit of the other. Stated differently, a duty exists if the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. *Id.* (citing Prosser and Keeton on the Law of Torts § 37, at 236 (5th ed.1984)). If no such relationship exists, then an obligation for the benefit of another is not imposed. *Erpelding,* ¶ 14.

 [¶ 17] For D & D's claim, the question is whether either Interline or Basin Western owed a duty to D & D not to injure the Well Draw Gas Plant. D & D fails to identify any such duty imposed on Basin Western or Interline for D & D's benefit. We too are unable to identify such a duty. Certainly Interline and Basin Western had no contractual obligation to continue operating the Well Draw Gas Plant. Interline and Basin Western did owe a duty to D & D not to negligently damage D & D's equipment while it was at the plant and that duty was breached. The breach of that duty proximately caused the damages to D & D's truck, and Interline and Basin Western are therefore liable to compensate D & D for those damages. However, Interline and Basin Western did not owe D & D a duty to continue operating the plant so D & D trucks could earn revenue by hauling in and out of the plant. In this instance, the relationship between D & D and Interline was simply a mutually advantageous business relationship.[1] Consequently, Interline and Basin Western owed D & D no duty to keep the Well Draw Gas Plant in operation or even to do business with D & D.

[¶ 18] We therefore conclude that no contractual or legal relationship existed which would support a duty to D & D in this instance. A duty of care must be established first, and D & D has failed to make such a showing. "Without duty, negligence is not actionable. The existence of duty is a question of law, making an absence of duty the surest route to summary judgment in negligence actions." *Erpelding,* ¶ 13. Thus, we hold that the district court did not err in granting summary judgment in favor of Basin Western and Interline.

## CONCLUSION

[¶ 19] D & D failed to show that Basin Western and Interline had a duty to not injure the Well Draw Gas Plant for D & D's benefit. Without a duty a negligence claim will fail. Accordingly, we affirm the district court's grant of summary judgment in favor of Basin Western and Interline.

---

1. Wyoming does recognize a cause of action for tortuous interference with business expectancy. However, D & D did not make this claim, and the circumstances of this case do not appear to support such a claim. *See Ahrenholtz v. Laramie Econ. Dev. Corp.,* 2003 WY 149, ¶ 17, 79 P.3d 511, ¶ 17 (Wyo.2003). Instead, this is a pure negligence claim and these damages are not damages that can be recovered in negligence in this instance.