2006 WY 151

**Rebecca HATTON and Asa Hatton, Appellants (Plaintiffs),**

**v.**

**ENERGY ELECTRIC CO., a Wyoming corporation, Appellee (Defendant).**

No.  06–32.

Supreme Court of Wyoming.

Dec. 15, 2006.

Representing Appellants: William R. Fix and Jenna V. Mandraccia of William R. Fix, P.C., Jackson, Wyoming.

Representing Appellee: John R. Goodell of Racine, Olson, Nye, Budge & Bailey, Chtd., Pocatello, Idaho.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]   Rebecca Hatton was injured in an automobile accident while she was traveling through road construction in the Snake River Canyon.  She and her husband, Asa Hatton, filed suit against the general contractor and various subcontractors on the job, including Energy Electric Co. (EEC), claiming the defendants were negligent in providing safety precautions in the construction area.  The district court granted EEC's summary judgment motion, ruling EEC did not owe a duty to the Hattons because it was not working in the area of the accident and had no control over the accident site.  After the district court declared the judgment was final, the Hattons appealed, arguing the evidence in the record demonstrated there were genuine issues of material fact about the duty element of their negligence cause of action and the district court prematurely granted summary judgment before they had an opportunity to complete discovery.  We conclude the district court properly ruled that EEC did not owe a duty to the Hattons because there was no evidence EEC had control over the work site where the accident occurred.  In addition, under the circumstances presented here, we conclude the district court's summary judgment order was not premature.  Consequently, we affirm.

## ISSUES

[¶ 2]   The Hattons pose the following issues on appeal:

I.   Whether the lower court's Order Granting Defendants' Motion for Summary Judgment in favor of Defendant Energy Electric, Co., was proper.

II.  Whether the lower court's Order Granting Energy Electric's Motion for Final Summary Judgment in favor of Defendant Energy Electric, Co., was proper.

EEC does not set out a separate statement of appellate issues.

## FACTS

[¶ 3] LeGrand Johnson Construction Company (LeGrand) was the general contractor on a highway construction project in the Snake River Canyon in Teton County. LeGrand entered into a subcontract with EEC in January 2000, which generally identified the work to be performed by EEC as "[e]lectrical and related items."

[¶ 4] According to the official accident report, Mrs. Hatton was driving through the road construction project on October 31, 2000. Approximately .05 miles south of milepost 140, she encountered an orange traffic cone in her driving lane. She swerved to avoid the cone and then overcorrected, causing her car to leave the roadway and roll over, coming to rest on its roof. Mr. and Mrs. Hatton filed two separate complaints, which were consolidated by the district court, naming various contractors involved in the project including LeGrand and EEC as defendants, and seeking damages for Mrs. Hatton's injuries and Mr. Hatton's loss of consortium.

[¶ 5] EEC filed a motion for summary judgment claiming it did not owe a duty to the Hattons because it was not working in the area and had no control over the site of the accident. In support of its motion, EEC filed an affidavit of its vice-president, Lee Middleton, which relied upon the official accident report to establish the nature, location, and time of the accident. Based upon that information, Mr. Middleton attested to the following facts concerning EEC's presence and role in the road construction project:

3. On January 26, 2000, EEC entered into a subcontract agreement with Legrand Johnson Construction Co., whereby EEC agreed to perform certain services as an electrical subcontractor on WYDOT's highway construction job on U.S. Highway 89 between Alpine Junction and Hoback Junction.

4. On the date and location of Plaintiff's auto accident, as described in such Report, EEC was doing *no work* on the WYDOT highway construction job being done by others in the area on U.S. Highway 89 between Alpine Junction and Hoback Junction.

5. In accordance with EEC's subcontract agreement, and related construction drawings and documents, EEC performed electrical and related work in four separate (4) job locations. The location and nature of the work performed in each location are as follows:

*1st location:* At approximately MP [milepost] 135, which is also approximately 500 meters before the beginning of the project on the south end of the southbound lane, a beacon was placed on a wildlife signpost;

*2nd location:* At approximately MP 138 southbound lane, a beacon was placed on a wildlife signpost;

*3rd location:* Work in the town of Alpine near a trailer park on the north end of the town which is south of the road project;

*4th location:* Work at Hoback Junction which is north of the road project.

All of these locations are at least two (2) miles or more from MP 140 where the Plaintiff's accident occurred.

6. This Defendant's work on the subject job, when such was being performed, consisted solely of installing "electrical work and related items."

7. This Defendant's work on the subject job, when such are being performed, was done completely off and away from the traveled roadway, and had no impact on traffic movement.

8. This Defendant's scope of work had nothing to do with placing or maintaining temporary traffic cones or other safety or traffic flow devices at any time.

9. This Defendant had shut down work on the job for the winter on October 9, 2000. This Defendant did not resume work on the subject job until July 20, 2001 the following year. Plaintiff's auto accident reportedly occurred on October 31, 2000. At that time, this Defendant was off the job for over three (3) weeks.

[¶ 6] In response to EEC's summary judgment motion, the Hattons argued the evidence showed EEC was working "at the accident site" and the subcontract required

EEC to provide safety precautions in the area of the accident. In support of their position, they submitted a copy of the subcontract between LeGrand and EEC and an affidavit from Kent Ketterling, a Wyoming Department of Transportation (WYDOT) employee. Mr. Ketterling stated WYDOT, pursuant to a request from the Hattons, provided a number of documents from its files pertaining to the road construction project, including contracts, engineer reports, project diaries, etc. Other than the transmittal letters, the documents referenced in Mr. Ketterling's affidavit are not included in the record on appeal.

[¶ 7] The district court held a hearing on EEC's summary judgment motion and concluded there were no issues of material fact regarding whether EEC had any control over the accident site and, therefore, it could not have owed a duty to the Hattons. Consequently, the district court granted EEC a summary judgment. The order stated, in relevant part:

> Defendant Energy Electric Co. (EEC) did not have a legal duty to the Plaintiffs. EEC performed a limited scope of work in the Snake River Canyon, specifically, a flashing beacon light on a wildlife sign at milepost 135 and 138. The closest location of work was at least two miles from the accident scene. The scope of work was off the road and had nothing to do with traffic cones, safety, traffic flow, or related matters at the time of the accident. Further, EEC had completed all of its work for the season and had removed itself from the accident scene on October 9, 2000. EEC was not on site or working on October 31, 2000, the day of the accident.

The district court also ruled there was "no reason for delay" in entering a final judgment and dismissed the Hattons' complaint against EEC with prejudice. The Hattons appealed.

## DISCUSSION

[¶ 8] We evaluate the propriety of a summary judgment by employing the same standards and using the same materials as the district court. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006). Thus, our review is plenary. *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 7, 75 P.3d 640, 647 (Wyo.2003).

Wyo. R. Civ. P. 56 governs summary judgments. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). When reviewing a summary judgment, we consider the record in the perspective most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. We review questions of law *de novo* without giving any deference to the district court's determinations.

*Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 11, 123 P.3d 579, 586 (Wyo. 2005), quoting *Baker v. Ayres and Baker Pole and Post, Inc.*, 2005 WY 97, ¶ 14, 117 P.3d 1234, 1239 (Wyo.2005).

[¶ 9] "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Christensen v. Carbon County*, 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo.2004) (quoting *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002)). The party requesting a summary judgment bears the initial burden of establishing a *prima facie* case for summary judgment. If he carries his burden, "the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists." *Id.* We have explained the duties of the party opposing a motion for summary judgment as follows:

> "After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings . . ., and conclusory statements or mere

opinions are insufficient to satisfy the opposing party's burden."

The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact. *Cook*, ¶ 12, 126 P.3d at 890, quoting *Jones v. Schabron*, 2005 WY 65, ¶¶ 9–11, 113 P.3d 34, 37 (Wyo.2005).

### 1. *Does the Evidence in the Record Establish Any Issue of Material Fact?*

[¶ 10] The Hattons' claims against EEC were grounded in negligence. The elements of a negligence cause of action are: "(1) The defendant owed the plaintiff a duty to conform to a specified standard of care, (2) the defendant breached the duty of care, (3) the defendant's breach of the duty of care proximately caused injury to the plaintiff, and (4) the injury sustained by the plaintiff is compensable by money damages." *Valance v. VI–Doug, Inc.*, 2002 WY 113, ¶ 8, 50 P.3d 697, 701 (Wyo.2002). The determination of whether a duty exists is a question of law.[1] *D & D Transp., Ltd. v. Interline Energy Servs., Inc.*, 2005 WY 86, ¶ 18, 117 P.3d 423, 429 (Wyo.2005); *Erpelding v. Lisek*, 2003 WY 80, ¶ 13, 71 P.3d 754, 757 (Wyo. 2003). "Summary judgment is not favored in negligence actions, and in such cases a more exacting scrutiny is applied. However, where a plaintiff cannot establish the existence of a duty on the part of the defendant, summary judgment is appropriate." *Sponsel*

*v. Park County*, 2006 WY 6, ¶ 8, 126 P.3d 105, 108 (Wyo.2006). Thus, an absence of duty is the surest route to summary judgment in negligence actions. *D & D Transp., Ltd.*, ¶ 18, 117 P.3d at 429.

"Duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. *Anderson v. Two Dot Ranch*, Inc., 2002 WY 105, ¶ 44, 49 P.3d 1011, 1024 (Wyo.2002) (quoting *Gates v. Richardson*, 719 P.2d 193, 195 (Wyo.1986)). * * * A duty may arise by contract, statute, common law, "or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff." *Hamilton v. Natrona County Educ. Ass'n*, 901 P.2d 381, 384 (Wyo.1995). The legal question to be answered by the court is

"whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court."

*Thomas By Thomas v. South Cheyenne Water and Sewer Dist.*, 702 P.2d 1303, 1307 (Wyo.1985).

*Killian v. Caza Drilling, Inc.*, 2006 WY 42, ¶ 8, 131 P.3d 975, 979–80 (Wyo.2006) (some citations omitted). In *Allmaras v. Mudge*,

---

1. The Hattons argue, based upon *Selby v. Conquistador Apartments, Ltd.*, 990 P.2d 491 (Wyo. 1999), the question of whether EEC owed them a duty is a question of fact which should be determined by the trier of fact. We disagree. *Selby* involved application of the law pertaining to natural accumulations of snow and ice. Under the circumstances presented in that case, we concluded the question of whether the accumulation was natural was a question of fact. Thus, the resolution of whether a legal duty existed required determination of certain basic facts, resulting in a rare circumstance where the question of whether a duty existed was given to the

trier of fact. *Id.* at 494–96. That same rationale does not apply to the circumstances presented in the case at bar. In other cases involving accidents in road construction areas, courts have determined the duty issue as a matter of law. *See, e.g., Allmaras v. Mudge*, 820 P.2d 533 (Wyo. 1991); *Miller v. Rissler & McMurry Co.*, 794 P.2d 91 (Wyo.1990). Unlike the *Selby* case, we do not need to determine basic facts before we can rule on the duty issue in this case. Consequently, the case at bar is not one of the rare circumstances where the determination of whether a duty exists should be made by the trier of fact.

820 P.2d 533 (Wyo.1991), we discussed the duties of contractors on road construction sites. We held, under the circumstances presented there, the general contractor had a non-delegable duty to provide for the safety of the driving public; however, no similar duty attached to a sub-contractor who did not exercise control over the general job and was not working on the job site at the time of the accident. *Id.* at 536–38.

[¶ 11] As explained above, EEC supported its summary judgment motion with Mr. Middleton's affidavit. He described the location and timing of EEC's work on the road construction project and, relying on the official accident report to establish the date and location of Mrs. Hatton's accident, stated the company had not worked in the area of the accident at any time and was not working on the project at all when the accident occurred. Although the Hattons did not contest any of the information contained in the accident report, they claim the district court should not have considered Mr. Middleton's affidavit because he relied upon the accident report without having any personal knowledge of the facts contained in it.

[¶ 12] W.R.C.P. 56(e) speaks to the requirements for affidavits in summary judgment proceedings:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. . . .

[¶ 13] Obviously, Mr. Middleton did not have personal knowledge about the accident because he was not there when the accident happened. However, that was not the point of the affidavit. He was not attesting to the facts of the accident; instead, he was providing information about EEC's activities at the construction site at the time and place of the accident. EEC attached a copy of the accident report to Mr. Middleton's affidavit.

The Hattons did not submit any information to counter the basic facts of the accident as set out in Mr. Middleton's affidavit or the accident report. Presumably, Mrs. Hatton would have been able to correct any misstatements that may have existed in the accident report. Moreover, the Hattons' statement of facts contained in their submissions to the district court and their brief to this Court do not contradict the basic facts relied upon by Mr. Middleton in his affidavit. Under these circumstances, Mr. Middleton's affidavit provided proper evidentiary support for EEC's summary judgment motion.

[¶ 14] The Hattons also argue they presented sufficient evidence to refute the statements in Mr. Middleton's affidavit and, consequently, to establish material issues of fact about whether EEC was working in the area of the accident. They claim the affidavit of WYDOT employee, Kent Ketterling, with its accompanying documents, verified their contention that EEC "was in control of the site and doing work on or around the accident site where plaintiff was severely injured." Two problems exist with their position. First, as we explained above, the actual documents referred to in Mr. Ketterling's affidavit were not included in the record. Although the Hattons claim they referred to the documents at the summary judgment hearing, we have no way of verifying what occurred at the hearing because a transcript was not included in the record on appeal. The Hattons, as the appellants, had a duty to "provide us with a sufficient record on appeal to ensure proper consideration of their arguments." *Hoy v. DRM, Inc.*, 2005 WY 76, ¶ 14 n. 4, 114 P.3d 1268, 1277 n. 4 (Wyo.2005); W.R.A.P. 3.01 and 3.05. This Court cannot rely on their assertions as to what information the missing documents might have contained in order to create a genuine issue of material fact.

[¶ 15] Second, in their appellate brief, the Hattons claim the engineer reports referenced in Mr. Ketterling's affidavit indicated EEC was working on the project during the weeks of September 24, 2000, October 8, 2000, and October 14, 2000. Obviously, if evidence existed showing EEC was

on the job site during the week of October 14, 2000, it would, arguably, contradict Mr. Middleton's claim that EEC did not work on the project after October 9, 2000. However, even if the Hattons' description of the documents is accurate and could be considered as part of the record, the relevant date was the date of the accident, October 31, 2000, and they point to no evidence EEC was working in the area on that date. On this record, the Hattons did not refute Mr. Middleton's averments that EEC was not working in the area of the accident at any time and was not working on the road construction project at all when the accident occurred.

[¶ 16] The Hattons also present a vague claim that the subcontract between EEC and LeGrand imposed a general duty upon EEC to provide safety precautions on the portion of the highway where the accident occurred. They direct us to two provisions of the subcontract:

> ARTICLE IV. LIABILITY OF SUBCONTRACTOR
>
> The Subcontractor shall hold and save the Contractor harmless from any liability for damage to the said work, or for injury or damage to persons or property occurring on or in connection therewith.
>
> ARTICLE V. WARNING SIGNALS, BARRICADES, ETC.
>
> The Subcontractor shall provide, erect and maintain proper warning signals, signs, lights, barricades and fences on and along the line of said work, and shall take all other necessary precautions for the protection of the work and safety of the public.

[¶ 17] As we have said countless times, this Court interprets contracts to determine the parties' true intent. *See e.g., Baker,* ¶ 17, 117 P.3d at 1240. We interpret an unambiguous contract as a matter of law and in accordance with the ordinary and usual meaning of its terms. *Id.; Carlson v. Flocchini Investments,* 2005 WY 19, ¶ 15, 106 P.3d 847, 853 (Wyo.2005).

[¶ 18] The subcontract refers to "said work," which, within the context of the entire document presented to us, means the work required under the subcontract. Under the rationale of *Allmaras,* a subcontractor is not typically responsible for safety on the entire job site as long as it does not exercise control over the same. The contractual documents included in the record fall far short of creating some kind of general obligation for EEC to assume responsibility for safety for the entire project. Under Article V of the subcontract, EEC was required to provide safety precautions in the area of its work. The contract documents do not contain specific descriptions of the location of EEC's work on the road project; however, Mr. Middleton described the physical locations of EEC's work under the subcontract, which did not include the area of Mrs. Hatton's accident. The Hattons did not submit any evidence to contradict his averments. Because the record does not include any evidence suggesting EEC was responsible for safety on the entire job site or that it was working in the area of Mrs. Hatton's accident, no issue of material fact existed concerning whether EEC owed a duty to the Hattons. Summary judgment was proper in such circumstances.

### 2. *Was the Summary Judgment Premature?*

[¶ 19] The Hattons argue the district court erred by granting summary judgment to EEC because discovery had not been completed. They claim the district court violated the applicable rules of civil procedure and their due process rights and cite to *Abraham v. Great Western Energy, LLC,* 2004 WY 145, 101 P.3d 446 (Wyo.2004) as support for their position.

[¶ 20] In *Abraham,* we concluded the district court erred by refusing the plaintiffs' request for a continuance of the summary judgment hearing because they had not completed discovery. We said:

> W.R.C.P. 56(c) presupposes that discovery is complete and, ordinarily, discovery on the issues which are the subject of the summary judgment motion should be allowed to be completed before a motion for summary judgment is scheduled, heard, and decided. By scheduling the hearing on the motions for summary judgment be-

fore the deadline for discovery had passed and, thus, not allowing the Abrahams adequate time to prepare and file any other pertinent materials prior to that hearing, they were deprived of the protections to due process afforded by the applicable rules of civil procedure. *Abraham*, ¶ 19, 101 P.3d at 455. However, we did not rule a district court may never grant summary judgment before discovery has been completed, only that ordinarily, if doing so would unfairly prevent the opposing party from discovering contradictory evidence, it would be an abuse of discretion not to grant a request for a continuance to allow adequate time for such discovery. In *Cathcart*, we rejected the plaintiff's claim the district court erred by prematurely granting summary judgment in favor of the defendant because Cathcart had been given adequate time to prepare for the summary judgment proceedings and the opportunity to file additional materials. *Cathcart*, ¶ 31, 123 P.3d at 590.

[¶ 21] In this case, the Hattons filed their complaint against EEC on October 29, 2004. EEC answered and the district court held a scheduling conference in January 2005. Following the scheduling conference, the district court issued an order, setting the deadline for filing dispositive motions for February 22, 2005, and the hearing on those motions for March 22, 2005. The record contains no objection from the Hattons regarding the deadlines. EEC filed its motion for summary judgment on February 2, 2005, and included Mr. Middleton's affidavit in support of its motion. The Hattons responded with several filings, including: Plaintiffs' Designation of Record in Opposition to Defendant Energy Electric, Inc.'s Motion for Summary Judgment, with the subcontract between EEC and LeGrand attached; Plaintiffs' Rule 56(f) Motion to Supplement the Record, seeking permission to supplement the record with the deposition of Mr. Middleton and Mr. Ketterling's affidavit; and a brief responding to EEC's summary judgment motion.

[¶ 22] The Hattons represented to the court that Mr. Middleton's deposition was tentatively scheduled for March 8, 2005. They did not, however, take Mr. Middleton's deposition before the summary judgment hearing nor did they seek a continuance of the hearing, which took place as scheduled on March 22, 2005.

[¶ 23] On appeal, the Hattons claim the summary judgment proceedings were premature because, at the time of the summary judgment hearing, a discovery cutoff had not been established by the district court, expert witnesses had not been designated, and no depositions had been taken. The Hattons suggest they needed to take the depositions of Mr. Middleton and "several other key witnesses and experts" in order to adequately defend against the summary judgment motion. The error in the Hattons' argument is obvious. Unlike the plaintiffs in *Abraham*, the Hattons did not take the necessary steps to protect their discovery options. According to the record before us, the parties had scheduled Mr. Middleton's deposition prior to the hearing but, for reasons not revealed in the record, the deposition was not taken. The Hattons did not ask the district court to continue the summary judgment proceedings to allow them additional time to prepare.

[¶ 24] In order to avoid summary judgment, the Hattons had to establish facts that would support their claim that EEC had control of the accident area. It is obvious from Mr. Middleton's affidavit that he had information about EEC's work on the project. Yet, the Hattons did not depose him in an effort to dispute the representations made in his affidavit prior to the summary judgment hearing nor did they request additional time from the district court in order to gather that information.[2] In addition, the Hattons do not specifically identify the other "key witnesses or experts" they needed to depose to effectively oppose EEC's summary judgment motion or the testimony Mr. Middleton or the other witnesses may have given

---

2. In their appellate brief, the Hattons claim they argued to the district court at the hearing that the summary judgment proceedings were premature and discovery needed to occur. However, they filed no motion for a continuance and provide no transcript of the summary judgment hearing. Our review is limited to matters contained in the appellate record. *See Finch v. Farmers Co-op. Oil Co.*, 2005 WY 41, ¶ 9, 109 P.3d 537, 541 (Wyo.2005).

to establish material issues of fact. Under these circumstances, the Hattons have not established the summary judgment hearing, held in accordance with the district court's scheduling order, was premature or violated the rules of civil procedure or their due process rights.

[¶ 25]  The summary judgment in favor of EEC is affirmed.