# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 150

### OCTOBER TERM, A.D. 2022

November 29, 2022

REBECCA A. WIESE and TYLER D.
WIESE, individually and as the natural
parents and natural guardians of RDW, a
minor,

Appellants
(Plaintiffs),

v.

S-21-0215

RIVERTON MEMORIAL HOSPITAL,
LLC, a Delaware business entity,

Appellee
(Defendant).

*Appeal from the District Court of Fremont County*
The Honorable Jason M. Conder, Judge

*Representing Appellants:*
> Robert P. Schuster, Bradley L. Booke, Adelaide P. Myers of Robert P. Schuster,
> P.C., Jackson, Wyoming. Argument by Mr. Booke.

*Representing Appellee:*
> Patrick Murphy of Williams, Porter, Day & Neville, PC, Casper, Wyoming; LaMar
> F. Jost, Clarissa M. Collier of Wheeler Trigg O'Donnell LLP, Denver, Colorado.
> Argument by Ms. Collier.

*Representing Amicus Curiae, Wyoming Trial Lawyers Association:*
> Grant Lawson, Casper, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice**

[¶1]   Rebecca A. and Tyler D. Wiese (the Wieses) sued Riverton Memorial Hospital, LLC k/n/a SageWest Health Care-Riverton (Hospital) alleging it violated the (now-repealed) Wyoming Hospital Records and Information Act (Act), Wyo. Stat. Ann. §§ 35-2-605 to 35-2-617.[1] Among other things, the Wieses claimed the Hospital failed to provide them the metadata (audit trail) associated with Ms. Wiese's Centricity Perinatal (Centricity) electronic medical record.  The district court granted summary judgment to the Hospital and denied summary judgment to the Wieses.  It implicitly held audit trails associated with electronic medical records are not medical records or health care information required to be disclosed under the Act.  It also determined the Hospital complied with the Act by producing Ms. Wiese's medical records and informing them her Centricity electronic medical record, which was needed to generate the Centricity audit trail, did not exist and/or could not be found.  The court denied the Wieses' motion for additional discovery under Wyoming Rule of Civil Procedure (W.R.C.P.) 56(d) and denied as moot their motion to compel discovery and motion to conduct a joint inspection of the Hospital's Centricity data storage devices.  Because we conclude audit trails qualify as "health care information" under the Act and a genuine issue of material fact exists as to whether the Hospital complied with the Act with respect to Ms. Wiese's Centricity electronic record and audit trail, we reverse and remand for further proceedings consistent with this opinion.

## ISSUES

[¶2]   The Wieses raise four issues, which we restate as three:

1. Did audit trails constitute "health care information" under the Wyoming Hospital Records and Information Act?

2. Did the district court err by concluding no genuine issues of material fact existed regarding whether the Hospital complied with the Act with respect to Ms. Wiese's Centricity electronic record and audit trail?

3. Did the district court err by failing to consider the Wieses' outstanding motions before ruling on the parties' summary judgment motions?

---

[1] About a year after the Wieses filed suit, the Wyoming legislature repealed the Act.  2019 Wyo. Sess. Laws, ch. 78, § 3.  Prior to its repeal, the Act allowed "[a] person aggrieved by a violation of this act" the right to "maintain an action for relief" and stated "[a] court may order the hospital or other person to comply with this act and may order any other appropriate relief."  Section 35-2-616(a), (b).  The Act also provided: "If a court determines that there is a violation of this act, the aggrieved party may recover damages for pecuniary losses sustained as a result of the violation and may assess reasonable attorneys fees and all other expenses reasonably incurred in the litigation."  Section 35-2-616(e).

1

*RDW's Birth and Centricity*

[¶3]    On the evening of September 24, 2012, Ms. Wiese was admitted to the Hospital's labor and delivery unit for a planned induction of labor.  She gave birth to RDW at 9:50 a.m. the next day.  He had no respirations, tone, reflexes, or color.  RDW was intubated and life-flighted to a hospital in Denver, Colorado, where he was diagnosed with cerebral palsy as a result of "severe hypoxic ischemic encephalopathy"—brain damage caused by lack of oxygen to critical brain structures.  Ms. Wiese was discharged from the Hospital on September 26, 2012.

[¶4]    At the time of RDW's birth, the Hospital's primary electronic patient medical record software system was Hospital Management System (HMS).  The Hospital also collected patient medical data from its labor and delivery unit via Centricity, a proprietary software system developed and owned by General Electric Healthcare and/or General Electric Medical Systems (GE Healthcare).  Centricity temporarily stored/saved patient medical data on a primary and a back-up server, both located on-site at the Hospital.

[¶5]    Due to data storage limitations on the servers, data on both the primary and back-up servers was constantly being overwritten as new data entered the servers.  To preserve the data before it was overwritten, Centricity automatically archived the data on each server to a compact disc (CD).  When a CD reached its data storage limit and needed to be replaced, Centricity would send an electronic message (a "pop up" box) to the nurses in the labor and delivery unit, informing them the CD needed to be replaced with a new CD.  When the nurse removed the CD from the server, he or she would handwrite on the face of the CD the date it was removed and a unique Centricity identification number (Centricity ID), which he or she obtained from GE Healthcare.  The Centricity ID identified the day of the year and the year the CD was removed.  Before placing a new CD into the server, the nurse would handwrite on its face the date the CD was placed into the server.  As a result, each Centricity CD contained, handwritten on its face, the date the CD had been placed into the server, the date it was removed, and the Centricity ID.  Each CD was also electronically embedded with the Centricity ID.  The Hospital stored these CDs in a locked cabinet in its labor and delivery unit until 2015, when it closed that unit.  The CDs are now locked in the Hospital's Information Systems Department.

[¶6]    After a patient's labor and delivery, the Hospital would print the patient's Centricity electronic record and scan it into the patient's HMS electronic record.  In this case, a nurse printed Ms. Wiese's Centricity electronic record on September 25, a few hours after RDW's birth, and the Hospital's Health Information Management Department scanned the printed Centricity electronic record into her HMS electronic record.

### *The Wieses' Requests for Records*

[¶7]   In October 2015, about three years after RDW's birth, the Wieses sent medical releases to the Hospital and requested all medical and billing records relating to Ms. Wiese's stay at the Hospital from September 24-26, 2012.  In November and December 2016, the Hospital responded by producing a hard copy of Ms. Wiese's HMS electronic record, which included a hard copy of Ms. Wiese's scanned-in Centricity electronic record.

[¶8]   The hard copy records revealed that most of the nursing entries (entries made by nurses from their observations rather than entries made automatically by monitoring sensors) in Centricity were not created contemporaneously with the events but rather hours later.  For example, the nursing entries appearing on the printed fetal monitoring strip for the period from 8:15 a.m. to 8:20 a.m. on September 25, 2012, were actually created by the nurses between 4:06 p.m. and 4:08 p.m. on September 25, 2012, over five hours after RDW's birth.  The printed "Delivery Summary" from Centricity showed blood from the umbilical cord (cord blood) had been "[t]aken," but the Hospital had not produced any laboratory test records or results for the cord blood.  The Wieses asked the Hospital whether any pathology slides or tissue samples, such as cord blood, existed.  The Hospital informed the Wieses there were no pathology or slides "because the physician did not order any" and stated it had provided them "with the entire hospital chart and record in this . . . matter."

[¶9]   In February 2018, the Wieses wrote the Hospital claiming it had withheld "[s]ignificant records."  They again requested the Hospital send them all medical records relating to Ms. Wiese's stay at the Hospital in September 2012, including the Centricity audit trail.  Unlike a paper record, which only reveals the last information entered into the record, an audit trail records and stores information identifying all occasions on which an electronic medical record was accessed, who accessed it, from where, what part of the electronic medical record was viewed, and the content of all entries made in the electronic record, including whether any information was deleted or altered and what information was deleted or altered.  Consequently, the information in an audit trail may show if and when the records were supplemented, edited, or deleted.

[¶10]  In April 2018, the Hospital responded to the Wieses' letter, alleging it had provided them copies of all the medical records to which they were legally entitled.  With respect to the Wieses' request for audit trails, the Hospital stated it was not legally obligated to produce them to patients but nevertheless agreed to produce the audit trail associated with Ms. Wieses' HMS electronic record.[2]  It informed the Wieses that the HMS audit trail was the only audit trail relating to Ms. Wiese in its possession, custody, and control.  It claimed it was unable to produce the audit trail associated with Ms. Wiese's Centricity electronic

---

[2] The Wieses claim the "audit trail" produced by the Hospital for HMS was actually an access log.  We do not read their brief, however, as arguing the Hospital failed to comply with the Act by not producing the HMS audit trail.  Their arguments are focused on the audit trail associated with Ms. Wiese's Centricity electronic record.

record (or any of the Centricity record in an electronic format). It explained it had "expended considerable resources and hired forensic computer experts in order to produce this irrelevant and duplicative data[] but was unable to access this information. However, since all of the Centricity records are time stamped with the date of every entry and the user, audit-like data is available from the face of the [hard-copy] records."

### *The Wieses' Complaint and Discovery*

[¶11] In June 2018, the Wieses filed a complaint against the Hospital alleging it violated the Wyoming Hospital Records and Information Act by failing to provide them all "health care information" concerning Ms. Wiese's labor and delivery, including Ms. Wiese's Centricity audit trail. To the extent the Hospital claimed the electronic information had been deleted or was not accessible, the Wieses asked for a court order allowing them, through their experts, to have access to the Hospital's Centricity servers and other storage devices to attempt to retrieve the requested data. The Hospital answered the complaint, again alleging it had no legal obligation to produce the Centricity audit trail. It also maintained for the first time that it had located the Centricity CD that was supposed to contain Ms. Wiese's Centricity electronic record, but the record was not on the CD. It reiterated it had retained a forensic expert to search for Ms. Wiese's Centricity electronic record on the Hospital's Centricity servers and a CD and claimed the expert had determined the electronic record "was not deleted" but rather "it [was] simply never saved."

[¶12] Extensive discovery (and discovery disputes) ensued, during which the Wieses learned of the Hospital's attempts to locate Ms. Wiese's Centricity electronic record, which was needed to "run" or generate the Centricity audit trail. Linda Tice, the Hospital's Director of Information Services, testified that in 2017 she searched for Ms. Wiese's Centricity electronic record. She explained she began by searching the Centricity primary server. Although she discovered Ms. Wiese's name on the server, her Centricity electronic record was no longer there because "it's too old" and "theoretically [it had been] sent . . . to CD." She did not search the backup server because it is a "mirror" of the primary server, meaning it "has the exact same information on it that the primary server has."

[¶13] Ms. Tice then logged into Centricity and found Ms. Wiese's name. The system informed her Ms. Wiese's electronic record had been archived to a CD with the Centricity ID of "QS333201201." Under the Centricity coding system, the code "QS333201201" indicated the CD containing Ms. Wiese's Centricity electronic record was removed from the server on the 333rd day of 2012 or November 28, 2012. She located the CD with the relevant date range (August 16, 2012, to November 28, 2012) and "QS333201201" written on its face. She placed the CD into the Centricity server and discovered other patients' records, but not Ms. Wiese's. She also discovered the CD was electronically embedded with "QS229201201," a different Centricity ID than that handwritten on the face of the CD. This ID meant the CD had been removed from the server on the 229th day of 2012 or August 16, 2012, a month before Ms. Wiese's admission to the hospital. Ms. Tice then

reviewed every Centricity CD in the Hospital's possession (approximately 25-50 CDs), and none had "QS333201201" electronically embedded on it.

[¶14]  Ms. Tice testified she called GE Healthcare's "800 support line" and informed GE Healthcare she was looking for a record and could not find it.  She asked if GE Healthcare could help her find the record; it informed her it would "take a look."  GE Healthcare emailed her back, stating it "didn't find anything either."

[¶15]  The Hospital retained Forensic Pursuit to perform a forensic analysis of the Centricity primary and back-up servers, one Centricity CD, and a thumb drive.  Andrew Jacobs performed the analysis for Forensic Pursuit in late Summer 2017.  He discovered three items on the thumb drive.  The contents of the items consisted of directions on how to install a physical power supply.  Mr. Jacobs observed 239 ".gz folders," which Mr. Jacobs described as "archive" folders, saved under a "PTFiles" folder on the CD.  He knew these items were patient files, but he could not open any of them or view their contents. He found 3,211 databases on the primary server ranging in date from 2004 to 2015 (the year the Hospital closed its labor and delivery unit).  He did not analyze the back-up server or even attempt to power it on.  Many of the databases on the primary server were proprietary and could not be viewed without running the appropriate software.  Of the few items he could preview on the server, none of them were patient records or audit trails.  Mr. Jacobs attempted to run the Centricity software on the server to open the databases, but he was unsuccessful because the software had been disabled.  He claimed, "[s]oftware support would be required for further steps," but he did not contact GE Healthcare for assistance because such task was "outside the scope" of his assignment.  Mr. Jacobs testified either Ms. Tice or the Hospital's attorney provided him terms to search for on the primary server, but he did not recall them or record them.  In conclusion, he stated he had "exhausted all traditional means of observing or acquiring the specific records.  Forensic standards were used to image and parse the data, but due to the nature of the records and proprietary database formats, no readable data could be obtained."

[¶16]  On November 22, 2019, approximately four months after Ms. Tice's deposition and one month after Mr. Jacob's deposition, the Hospital provided the Wieses pictures of two Centricity CDs which the Hospital gathered and transported to its counsel's office, one of which was analyzed by Mr. Jacobs.  The photographs showed that the original date range (August 16, 2012, to November 28, 2012) and Centricity ID ("QS333201201") handwritten on the face of the CDs had been crossed out and replaced with a new date range (January 4, 2012, to August 16, 2012) and a new Centricity ID ("QS229201201").  The Hospital later admitted it was Ms. Tice who made the cross-outs.  Because these photographs showed the CD analyzed by Mr. Jacobs could not have contained Ms. Wiese's Centricity electronic record, the Wieses served additional discovery requests on the Hospital seeking more information concerning its search for Ms. Wiese's Centricity electronic record.

### The Parties' Motions and the District Court's Orders

[¶17] On December 10, 2019, eight days after the Wieses served their additional discovery requests, the Hospital filed a motion for summary judgment. It again claimed audit trails are not medical records under the Act. It also argued the Act required it to produce for a patient only those records in its possession or inform the patient the records do not exist or cannot be found. It maintained the Act did not require it to affirmatively prove medical records cannot be located. According to the Hospital, the Wieses produced no evidence showing it was in possession of additional medical records that had not already been produced or that existed. Relevant here, as to the Centricity audit trail, the Hospital claimed that because it could not locate Ms. Wiese's Centricity electronic record, it could not generate the Centricity audit trail.

[¶18] The Wieses also filed a motion for summary judgment.[3] Relevant here, they claimed audit trails fell within the purview of the Act and must be produced. They claimed the evidence was undisputed that Ms. Wiese's Centricity electronic record was saved and burned to a CD on November 28, 2012, yet the Hospital had not produced the electronic record or audit trail as required by the Act. They argued they were entitled to summary judgment due to the Hospital's violation of the Act and an order permitting them, at their expense, with the assistance of GE Healthcare and in the presence of the Hospital, its counsel, and the parties' experts, to inspect the Hospital's Centricity servers and all Centricity CDs (joint inspection). On the same day, they also filed a W.R.C.P. 56(d) motion, informing the court of the Hospital's alleged belated production of the picture of the CD inspected by Mr. Jacobs and asking the court to defer ruling on the Hospital's summary judgment motion until the Hospital answered their most recent discovery requests. They claimed without this discovery, they could not present essential facts opposing the Hospital's summary judgment motion. About a week later, the Wieses filed a motion to compel the Hospital to answer their discovery requests. They also filed a formal motion to conduct a joint inspection of the storage devices given to Mr. Jacobs, as well as the 25-50 CDs searched by Ms. Tice.

[¶19] The district court denied the Wieses' W.R.C.P. 56(d) motion. It decided the Wieses had not established they had insufficient time to obtain the necessary discovery or demonstrated an inability to adequately respond to the Hospital's summary judgment

---

[3] The Wieses failed to file a W.R.C.P. 56.1(a) statement of undisputed material facts with its summary judgment motion. W.R.C.P. 56.1(a) ("Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, in addition to the materials supporting the motion, there shall be annexed to the motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."). "The purpose underlying rules such as W.R.C.P. 56.1 is to provide a tool 'for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of hunt[ing] through voluminous records without guidance from the parties.'" *RB, Jr. by & through Brown v. Big Horn Cnty. Sch. Dist. No. 3*, 2017 WY 13, ¶ 10, 388 P.3d 542, 546 (Wyo. 2017) (quoting *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005)). The district court noted the Wieses' failure to submit the required statement but did not otherwise fault them for this failure.

motion because they had responded to the motion and, in fact, filed their own competing motion for summary judgment. The court denied the Wieses' motion for summary judgment and granted summary judgment to the Hospital. The court determined the Hospital complied with the Act by producing Ms. Wiese's and RDW's medical records and by informing the Wieses that the Centricity electronic record and audit trail did not exist and/or could not be found. It denied as moot the Wieses' motion to compel and motion to conduct a joint inspection. The Wieses timely appealed.[4]

## DISCUSSION

[¶20] The Wieses argue the district court erred by granting summary judgment to the Hospital because audit trails were "health care information" under the Act and a genuine issue of material fact exists as to whether the Hospital complied with the Act with respect to Ms. Wiese's Centricity audit trail. They also claim the court erred by granting summary judgment to the Hospital in spite of their pending discovery motions. The Hospital argues we need not decide whether audit trails were "health care information" under the Act because the district court did not decide the issue. Rather, it contends the court correctly granted summary judgment to it because it complied with the Act by informing the Wieses that the Centricity audit trail did not exist and/or could not be found. Because the Hospital believes the district court's summary judgment order was correct, it also maintains the court correctly denied the Wieses' outstanding motions as moot.

[¶21] The district court did not explicitly decide whether or not audit trails were "health care information" under the Act. However, by concluding the Hospital complied with the Act by producing Ms. Wiese's and RDW's medical records despite not producing the Centricity audit trail, the court implicitly decided audit trails were not "health care information" under the Act. Moreover, if audit trails did not constitute "health care information" under the Act, then we need not decide whether the court erred in granting summary judgment to the Hospital based on its determination the Hospital complied with the Act by informing the Wieses that Ms. Wiese's Centricity electronic record and audit trail did not exist and/or could not be found. As a result, we first address whether audit trails constituted "health care information" under the Act.

### Audit Trails

---

[4] In addition to the Hospital, the Wieses filed their complaint against Alan Daugherty, the Hospital's Chief Executive Officer, and Sylvia Martinez, the Hospital's Director of Health Information Management. The Hospital filed a counterclaim against the Wieses for abuse of process. The district court granted summary judgment to Mr. Daugherty and Ms. Martinez on the Wieses' claim under the Act and granted summary judgment to the Wieses on the counterclaim. Neither the Wieses nor the Hospital appealed from these summary judgment decisions. These decisions are not before us.

7

[¶22]  The Wieses devote much of their opening brief to arguing federal law establishes that audit trails are medical records to which a patient has access.  However, they brought suit under the Wyoming Hospital Records and Information Act, not any federal statute or regulation.  The narrow issue before us is whether patients had a right to the audit trails associated with their electronic records under the now-repealed Act.

[¶23]  At the time the Wieses filed this lawsuit, § 35-2-611(a) (LexisNexis 2015) of the Act stated:

> (a) Upon receipt of a written request from a patient to examine or copy all or part of the patient's recorded *health care information*, a hospital, as promptly as required under the circumstances, but no later than ten (10) days after receiving the request shall:
> (i)   Make the information available for examination during regular business hours and provide a copy, if requested, to the patient;
> (ii)    Inform the patient if the information does not exist or cannot be found;
> (iii)    If the hospital does not maintain a record of the information, inform the patient and provide the name and address, if known, of the health care provider or health care facility that maintains the record;
> (iv)    If the information is in use or unusual circumstances of delay occur in handling the request, inform the patient and specify in writing the reasons for the delay and the earliest date, which shall not be later than twenty-one (21) days after receiving the request, when the information will be available for examination or copying or when the request will be otherwise answered; or
> (v)    Deny the request, in whole or in part, under W.S. 35-2-612 and inform the patient.

(Emphasis added).

[¶24]  The Act defined "[h]ealth care information" as "*any information*, whether oral or recorded in *any* form or medium, that identifies or can readily be associated with the identity of a patient and *relates to* the patient's health care, *and includes any record of disclosures of that information*[.]"  Section 35-2-605(a)(vii) (emphasis added).  "Health care" meant "any care, service or procedure provided in a hospital licensed under the laws of this state:  (A) To diagnose, treat or maintain a patient's physical or mental condition; or (B) That affects the structure or any function of the human body."  Section 35-2-605(a)(v).

8

[¶25] The Wieses argue audit trails qualify as "health care information" to which they have access under the Act. The Hospital maintains we should not create a blanket rule that audit trails are always part of a patient's medical record, but rather should leave this decision to the sound discretion of the trial court to decide on a case-by-case basis. It also maintains, as it did throughout the district court proceedings, that audit trails were not "health care information" under the Act because they do not document patient treatment/care or assist in making treatment decisions, but rather contain administrative information about when users access and enter information.

[¶26] Whether audit trails were "health care information" under the Act is a question of statutory interpretation, a legal question, not one to be made on a case-by-case basis as the Hospital maintains. *Guy v. Lampert*, 2016 WY 77, ¶ 13, 376 P.3d 499, 502 (Wyo. 2016) (citing *Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo. 2014)). "'When interpreting a statute . . . , we first look at the plain language used by the legislature. If the [statutory language] is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning.'" *Ailport v. Ailport*, 2022 WY 43, ¶ 22, 507 P.3d 427, 437 (Wyo. 2022) (quoting *DB v. State (In re CRA)*, 2016 WY 24, ¶ 16, 368 P.3d 294, 298 (Wyo. 2016), and citing *MR v. State (In re CDR)*, 2015 WY 79, ¶ 19, 351 P.3d 264, 269 (Wyo. 2015)).

[¶27] Section 35-2-611(a) of the Act unambiguously allowed a patient to make a written request to a hospital to copy and examine all or part of his "recorded health care information" and required the hospital to promptly respond to the patient's request in one of five ways. The definition of "health care information" is also clear and unambiguous. It broadly referred to "any" information in "any" form that identifies the patient or is associated with the patient's identity and "relates to" the patient's health care, i.e., the care, services, or procedures the patient received from the hospital to diagnose, treat, or maintain his physical or mental condition or which affects his bodily functions or structures. The ordinary meaning of "relates to" is "to be connected with (someone or something)." https://www.merriam-webster.com/dictionary/relate (last visited Nov. 11, 2022). "[H]ealth care information" also "include[d] any record of disclosures of that information[.]"

[¶28] Audit trails satisfy the broad definition of "health care information" provided by the Act. Audit trails capture the content of every entry (including deletions and alterations) made into a patient's electronic medical chart, by whom, and from where. These entries are made by hospital personnel while the patient is being diagnosed or treated in the hospital and the information entered pertains to the care, services, and procedures provided by the hospital to the patient to diagnose, treat, or maintain his physical and mental health or bodily structures and functions. Audit trails also record who accessed the patient's electronic record and from where. In other words, audit trails are "any information" which identifies the patient or is associated with the patient's identity and "is related to" or

connected with the health care the patient receives at the hospital and include any disclosures of the information.

[¶29] Audit trails qualify as "health care information" under the Act.

### *Summary Judgment*

[¶30] W.R.C.P. 56(a) authorizes a district court to grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." We review the district court's summary judgment order de novo. *Kappes v. Rhodes*, 2022 WY 82, ¶ 14, 512 P.3d 31, 35 (Wyo. 2022) (citations omitted). We review "'the same materials and use[] the same legal standard as the district court. The record is assessed from the vantage point most favorable to the party opposing the motion . . ., and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.'" *Id.* (quoting *White v. Wheeler*, 2017 WY 146, ¶ 14, 406 P.3d 1241, 1246 (Wyo. 2017), and *The Tavern, LLC v. Town of Alpine*, 2017 WY 56, ¶ 46, 395 P.3d 167, 178-79 (Wyo. 2017)) (internal citations omitted).

> "The party requesting a summary judgment bears the initial burden of establishing a *prima facie* case for summary judgment." *Gowdy v. Cook*, 2020 WY 3, ¶ 22, 455 P.3d 1201, 1207 (Wyo. 2020) (quoting *Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶ 9, 148 P.3d 8, 12 (Wyo. 2006)). "Once the movant establishes a *prima facie* case for summary judgment, the burden shifts to the opposing party to present materials demonstrating a genuine dispute as to a material fact for trial." *Id.*, ¶ 23, 455 P.3d at 1207 (citing *Hatton*, ¶ 9, 148 P.3d at 12-13). "'The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment[.]'" *Id.* (quoting *Jones v. Schabron*, 2005 WY 65, ¶ 10, 113 P.3d 34, 37 (Wyo. 2005)) (other quotation marks and citation omitted).

*Kappes*, ¶ 15, 512 P.3d at 35. "When the parties file cross-motions for summary judgment and the district court issues a decision completely resolving the case by granting summary judgment to one party and denying the other's motion, we review both aspects of the district court's order." *Gowdy*, ¶ 23, 455 P.3d at 1207 (citing *Dowell v. Dowell (In re Mark E. Dowell Irrevocable Trust),* 2012 WY 154, ¶ 16, 290 P.3d 357, 360 (Wyo. 2012)).

[¶31] The Wieses argue the district court erred by granting summary judgment to the Hospital because there is a genuine issue of material fact as to whether the Hospital

complied with the Act with respect to Ms. Wiese's Centricity audit trail. Specifically, they argue there is a genuine issue of material fact as to whether the Hospital made a good faith effort to locate Ms. Wiese's Centricity electronic record (which was necessary to generate the Centricity audit trail) before informing them that the Centricity audit trail did not exist or could not be found. The Hospital maintains the court correctly granted summary judgment in its favor because the undisputed facts show it complied with the Act.

[¶32] As we stated above, the Act allowed a hospital, in response to a patient's written request for health care information, to "[i]nform the patient if the information does not exist or cannot be found[.]" Section 35-2-611(a)(2). Neither party contends a hospital satisfies its duties under the Act by merely informing a patient that the requested information does not exist or cannot be found. Rather, the Hospital claims in its brief that it complied with the Act because it "attempted in good faith" to determine if Ms. Wiese's Centricity audit trail existed and it "diligently searched" for the audit trail. It also admitted at oral argument that the statute required it to make a good faith attempt to locate the information before it could inform a patient that certain information does not exist or cannot be found. Such good faith requirement is implicit in the language "does not exist" and "cannot be found." Indeed, it would make little sense if a hospital could satisfy its duties under the Act by simply responding to a patient's request to examine or copy health care information with "the information does not exist or cannot be found" without having made a good faith effort to determine whether the information, in fact, does not exist or cannot be found. "We strive to avoid an interpretation that produces an absurd result, . . . or that renders a portion of the statute meaningless." *Seherr-Thoss v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2014 WY 82, ¶ 19, 329 P.3d 936, 945 (Wyo. 2014).

[¶33] Viewing the facts in the light most favorable to the Wieses, we conclude there is a genuine issue of material fact as to whether the Hospital complied with the Act, i.e., whether the Hospital made a good faith effort to locate Ms. Wiese's Centricity electronic record and therefore whether that record and the corresponding audit trail, in fact, "does not exist or cannot be found."

[¶34] Ms. Tice testified she searched the Centricity servers and all of the Hospital's Centricity CDs for Ms. Wiese's Centricity electronic record and did not find it. However, she stated she searched the CDs only for the embedded Centricity ID, not for Ms. Wiese's Centricity electronic record. Ms. Tice also testified she called GE Healthcare for assistance in finding the record. GE Healthcare emailed her back, stating it "didn't find anything either." Although the record reveals GE Healthcare could remotely access the Hospital's Centricity servers, the record does not indicate whether GE Healthcare searched the servers, checked for records of CDs being made, or reviewed any CDs. The record is silent as to the nature and extent of GE Healthcare's search.

[¶35] Mr. Jacobs searched one Centricity CD and observed files, but he could not open any of them. He determined no files had been deleted from that particular CD. However,

11

that CD could not possibly have contained Ms. Wiese's Centricity electronic record because the CD had been removed from the server on August 16, 2012, over a month before Ms. Wiese's admission to the hospital. He did not search any other CD.[5] Mr. Jacobs searched the primary Centricity server and discovered over 3,000 databases ranging in date from 2004-2015, but he could not open or preview any of them because he could not run the Centricity software on the server. He did not contact GE Healthcare for assistance, nor was he asked to do so, even though he admitted such assistance would be necessary to access the files. Mr. Jacobs did not search or even power up the back-up server. In sum, Mr. Jacob's analysis could not and did not determine whether or not Ms. Wiese's Centricity electronic record was on either the primary or back-up server or whether it had been archived to a CD. Indeed, he stated he was not tasked with accessing medical records or audit trails and, if he had been, he would need experts familiar with Centricity to assist.

[¶36]   Because a genuine issue of material fact exists as to whether the Hospital complied with the Act by making a good faith effort to locate Ms. Wiese's Centricity electronic record for purposes of creating the corresponding audit trail, the district court erred in granting summary judgment to the Hospital.[6]

### *Outstanding Motions*

[¶37]   The Wieses maintain the district court erred by granting the Hospital's summary judgment motion while their various discovery motions were pending. The Wieses appear to include their W.R.C.P. 56(d) motion in this argument, yet that motion was not pending at the time the district court granted summary judgment to the Hospital because the court had denied it ten days before it issued its summary judgment order. The Wieses' other discovery motions (motion to compel and motion for joint inspection) were pending at the time the court granted summary judgment to the Hospital. The court found these motions were rendered moot by its summary judgment ruling. In light of our decision that summary judgment to the Hospital was improper, these motions are "no longer moot and must be addressed by the district court on remand." *Singer v. Lajaunie*, 2014 WY 159, ¶ 29, 339 P.3d 277, 285 (Wyo. 2014).

---

[5] In his conclusion letter and in his direct deposition testimony, Mr. Jacobs indicated he analyzed only one Centricity CD and it came from the primary server. However, on cross-examination, he indicated he took a screen shot of the data contained on the Centricity CD from the back-up server and determined the size of the data on that CD was identical to the size of the data on the CD from the primary server. According to him, this finding indicated the CDs were identical. He did not perform any further analysis of the CD from the back-up server. Even if he had, the CD from the back-up server could not possibly have contained Ms. Wiese's Centricity electronic record because the CD from the back-up server, like that from the primary server, had also been removed from the server on August 16, 2012, over a month before Ms. Wiese's admission to the hospital.

[6] In a portion of their brief, the Wieses ask that we remand this matter for entry of judgment in their favor. Due to the existence of a material issue of fact concerning the Hospital's compliance with the Act, the Wieses are not entitled to judgment.

[¶38]  The Wieses request we order a joint inspection of the Hospital's Centricity storage devices be conducted on remand.  We decline to do so.  The district court should decide, in the first instance, whether such joint inspection, or other discovery, is warranted.  *Cf. Roemmich v. Roemmich*, 2010 WY 115, ¶ 22, 238 P.3d 89, 95 (Wyo. 2010) ("A 'district court must generally be afforded broad discretion, both in the mechanisms adopted to control discovery and in its selection of appropriate sanctions for violations of . . . discovery. . . .'"  (quoting *Ruwart v. Wagner*, 880 P.2d 586, 592 (Wyo. 1994)).

## CONCLUSION

[¶39]  Audit trails were "health care information" under the (now-repealed) Act.  Because a genuine issue of material fact exists as to whether the Hospital complied with the Act with respect to Ms. Wiese's Centricity electronic record and audit trail, the district court erred in granting summary judgment to the Hospital.

[¶40]  We **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

13